IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:15-CR-326-BO-2

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| EBONY ROCHE MCGILL ) | |

This cause comes before the Court on defendant's motion for *Brady* materials, for evidence pursuant to Federal Rule of Evidence 404(b), to sequester government witnesses, and to suppress all evidence derived from the search of defendant's residence. The government has responded, and the matters are ripe for ruling. For the reasons discussed below, the motions for *Brady* materials [DE 43], 404(b) evidence [DE 44], and to suppress [DE 46] are DENIED, and the motion to sequester government witnesses is GRANTED IN PART AND DENIED IN PART [DE 45].

DISCUSSION

Defendant, Ebony Roche McGill, lived with co-defendant Shawn Burton and their three children in a three-story townhome located at 139 Braeside Court in Cary, North Carolina. In December 2014, postal inspectors discovered a suspicious package addressed to Ebony McGill at the Braeside Court residence. The inspectors obtained a warrant and discovered approximately 1.8 pounds of cocaine inside. A controlled delivery of the package involving the Raleigh Police Department, Cary Police Department, Wake County Sheriff's Office, and United States Postal Inspectors Office was arranged for December 18, 2014.

On that date, officers observed a man later determined to be co-defendant Shawn Burton leave the residence in a white Ford SUV. A short time later, the package was delivered to the

front door. Defendant retrieved the package and exited through the back door, where co-defendant was waiting on the road behind the residence in the SUV. Defendant put the package in the vehicle and ran back toward the residence.

As defendant approached the back door, two Cary police officers approached her. They could smell a strong odor of marijuana emanating from the back door, which was by then ajar. The officers placed McGill in investigative detention and asked if there was anyone else in the residence. McGill informed the officers that her sister and two small children were inside. An officer identified himself as a police officer and commanded them to make their presence known. Shortly thereafter, the sister and small children exited the back door.

After this, a Cary police officer and Raleigh detectives conducted a "cursory search" of the residence. During the search they observed, in plain view, a large box for a digital scale, a plastic bag of empty pill capsules, a plastic bag or marijuana, and a cardboard box containing plastic sandwich bags. Then, Officer R. W. Estes of the Cary Police Department sought and obtained a search warrant for the residence. Upon executing the search warrant, officers discovered several firearms and more drug paraphernalia.

DISCUSSION

I.  Motion to Suppress

Defendant moves to suppress all evidence seized during the search of the residence on December 18, 2014, arguing that there was no legal basis for the initial search of the home.

Warrantless entry into a residence is presumptively unreasonable but can be justified by exigent circumstances. *United States v. Turner*, 650 F.2d 526, 528 (4th Cir. 1981); *United States v. McKoy*, 2010 U.S. Dist. LEXIS 97185, *2–4 (E.D.N.C. Sept. 14, 2010). Instances where exigent circumstances have been found to exist include when police "(1) have probable cause to

2

believe that evidence of illegal activity is present and (2) reasonably believe that evidence may be destroyed or removed before they could obtain a warrant." *United States v. Cephas*, 254 F.3d 488, 494–95 (4th Cir. 2001). Five factors courts consider in evaluating exigency are:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessor of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband.

*Turner*, 650 F. 2d at 528.

Several of these factors, specifically the ones relating to the destruction of evidence, are relevant in the case at hand. The Fourth Circuit has held that "[e]xigent circumstances can arise when the evidence might be destroyed before a search warrant could be obtained." *United States v. Grissett*, 925 F.2d 776, 778 (4th Cir. 1991). The relevant inquiry turns on what an objective officer could reasonably believe; it does not require the officers to "produce concrete proof that the occupants of the room were on the verge of destroying evidence." *Id.*

Here, the facts of the encounter justify the officers' decision to conduct a cursory search. At the time of the encounter with defendant, officers knew she had recently delivered the package containing 1.8 pounds of cocaine that had been mailed to the residence in a coordinated endeavor with another adult who had been in the residence. Police approached defendant and immediately encountered a strong smell of marijuana emanating from the open back door of the residence. Police were also told there were three people—including one adult—inside the home.

It is true that the shipment of drugs the officers were originally monitoring was no longer believed to be in the residence; however, officers could smell a "strong odor of marijuana" from outside the residence's back door, which gave them probable cause to believe that there was marijuana in the residence. *See Cephas*, 254 F.2d at 496; *see also Grissett*, 925, F.2d at 778.

3

Moreover, here, as in *Grissett*, "police had identified themselves before smelling the marijuana," which meant the officers could "reasonably conclude that the occupants of the [residence] (especially when, as here, police were informed that there was another adult inside the residence) would attempt to dispose of the evidence before the police could return with a warrant." 925 F.2d 778. The nature of the contraband at issue—marijuana—is also salient as drugs are "an easily disposable substance." *Id.* For all these reasons, a cursory search was justified to prevent destruction of evidence.

Defendant argues primarily that the officers had no reason to believe there was someone still in the residence who could pose a danger. However, the relevant factor to consider is "the *possibility* of danger to police guarding the site." *Turner*, 650 F. 2d at 528 (emphasis added). At the time the officers in this case conducted the cursory search, they had probable cause to believe that they were interacting with someone who was part of a drug trafficking and/or drug dealing scheme of a certain level of sophistication, that there were drugs in the home, and that at least three other individuals—including one adult—were inside the residence. Moreover, the residence was markedly different from cases in which officers are investigating a mobile home or apartment or other similarly-sized residences where the area in which someone could be hiding is much smaller. Here, the residence was a three story townhome with an attached garage. [DE 46]. Based on all these factors, the officers could reasonably believe that there was a possibility of danger and justifiably conduct a cursory search.

Accordingly, the officers' cursory search was justified because of the risk that evidence could be destroyed inside and because the nature of the interaction presented the possibility of danger. The court notes that the presence of exigent circumstances does not grant officers a *carte blanche*, but that is not a concern here as the officers' initial search was truly cursory in nature.

4

Case 5:15-cr-00326-BO   Document 58   Filed 03/30/16   Page 4 of 8

The officers did not seize any evidence at that time, and they obviously did not conduct an exhaustive search, as additional incriminating items were discovered when executing the search warrant. For all these reasons, the Court finds that exigent circumstances existed to justify the cursory search.

Moreover, even if the cursory search were invalid, the Court finds persuasive the argument that the incriminating items in the home would have been inevitably discovered.

> [T]he inevitable discovery rule may be applied even though the evidence validly obtained under a search warrant was previously uncovered in an illegal search. Stated otherwise, where it appears that evidence 'inevitably would have been discovered by lawful means,' the deterrence rationale of the exclusionary rule has 'so little basis' that the rule should not be applied.

*United States v. Whitehorn*, 813 F.2d 646, 650 (4th Cir. 1987) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984). Accordingly, there is no need to exclude evidence seized prior to obtaining a search warrant if "the evidence inevitably would have been lawfully discovered and seized during execution of the search warrant." *United States v. Jackson-Forsythe*, 498 F.App'x 224, 227 (4th Cir. 2012). This remains true even if the search warrant is partially based on evidence discovered prematurely if, "excluding the illegally obtained information, probable cause for the issuance of the warrant could still be found." *United States v. Apple*, 915 F.2d 899, 910 (4th Cir. 1990); *Whitehorn*, 813 F.2d at 649; *see also United States v. Giordano*, 416 U.S. 505, 555 (1974) ("The ultimate inquiry on a motion to suppress evidence seized pursuant to a warrant is not whether the underlying affidavit contained allegations based on illegally obtained evidence, but whether, putting aside all tainted allegations, the independent and lawful information stated in the affidavit suffices to show probable cause.") (Powell, J., dissenting in part and concurring in part).

5

Here, the officers did seek—and obtain—a search warrant to search the residence at 139 Braeside Court. Execution of this search warrant would have inevitably revealed the contraband first observed during the cursory search. The fact that the search warrant application included items first seen during the cursory search is not fatal to the warrant's validity, as probable cause to grant the warrant would have existed anyway due to the shipment of cocaine to the residence and the strong smell of marijuana emanating from the residence. Accordingly, the incriminating items inside the home would have been inevitably discovered. For all the reasons discussed above, the Court denies defendant's motion to suppress.

II. Motion for Early Release of *Brady/Giglio* Evidence

Defendant requests that the Court order the government to disclose all *Brady/Giglio* material in its possession immediately. However, the government is already obligated to disclose to defendant and defense counsel all favorable and impeachment evidence pursuant to *United States v. Giglio*, 405 U.S. 150 (1972) and *Brady v. Maryland*, 373 U.S. 83 (1963). Moreover, the government asserts it will comply with these obligations, has already "provided broad discovery," and is unaware of any such evidence at this time that has not already been disclosed. [DE 53]. Accordingly, defendant's request for such evidence is noted, but a court order is unnecessary at this time. The motion is denied.

III. Motion for Evidence Pursuant to Federal Rule of Evidence 404(b)

Defendant moves for disclosure of evidence of any evidence the government intends to use against defendant pursuant to Rule 404(b). The government has responded that it does not intend to use such evidence at this time and that it will inform the defendant of the nature of such evidence should it arise. As a result, a court order on this issue is presently unnecessary, and the motion is denied.

IV.  Motion to Sequester Government Witnesses

In the motion for sequestration, defendant first askes that all government witnesses be sequestered from hearing other witnesses' testimony, pursuant to Federal Rule of Evidence 615 and *United States v. Farnham*, 791 F.2d 331 (4th Cir. 1995). Rule 615 provides for the exclusion of witnesses, at the request of a party, as a matter of right. *Farnham*, 791 F.2d at 334. The rule also forbids witnesses from discussing their testimony with other witnesses. *See United States v. Greschner*, 802 F.2d 373, 376 (10th Cir. 1986). The government's investigating agent may be exempted from sequestration. *See United States v. Parodi*, 703 F.2d 768, 773 (4th Cir. 1983).

In response, the government has agreed to designate a single case agent before trial and requested that defense witnesses also be sequestered. Both parties' requests for witness sequestration are granted.

Defendant next requests that the Court to prohibit communication between the prosecutor or case agent and persons who will be called as government witnesses concerning the testimony of previous government witnesses. However, "[i]t is clear from the plain and unambiguous language of Rule 615 that lawyers are simply not subject to the Rule." *United States v. Rhynes*, 218 F.3d 310, 316 (4th Cir. 2000). Consequently, the Fourth Circuit found in *Rhynes* that defense counsel's decision to discuss prior trial testimony of one witness with another did not run afoul of Rule 615. *Id.* at 320. The Fourth Circuit further noted that courts "must trust and rely on lawyers' abilities to discharge their ethical obligations . . . without being policed by overbroad sequestration orders." *Id.* Therefore, defendant's request for an order expressly prohibiting the prosecutor or case agent from revealing anything about the trial testimony of prior government witnesses to subsequent government witnesses is denied.

7

## CONCLUSION

For the reasons discussed above, defendant's motion to suppress [DE 46], for release of *Brady/Giglio* materials [DE 43], and for evidence under Rule 404(b) [DE 44] are DENIED. Defendant's motion to sequester government witnesses is GRANTED IN PART AND DENIED IN PART in accord with the language of this Order. [DE 45].

SO ORDERED, this 29 day of March, 2016.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

8